## A01A0383. ZEEMAN v. THE STATE.
### (549 SE2d 442)

RUFFIN, Judge.

Following a bench trial, Noah Zeeman was convicted of possessing cocaine in violation of the Georgia Controlled Substances Act. On appeal, he challenges the trial court's denial of his motion to suppress evidence. For reasons that follow, we affirm.

In reviewing the trial court's decision on a motion to suppress, we construe the evidence "most favorably to uphold the findings and judgment of the trial court; the trial court's findings on disputed facts and credibility are adopted unless they are clearly erroneous and will not be disturbed if there is any evidence to support them."[1]

Viewed in this manner, the evidence shows that two undercover police officers, Massey and Jones, arrested Zeeman early one morning at a gas station. Prior to the arrest, they observed Zeeman walking away from a car at the gas pumps toward the station's convenience store with an object in his hand. As Zeeman approached the store, he stopped another individual, and, according to Massey, "there appeared to be some sort of transaction between the two." Although the officers could not see exactly what transpired, Massey observed "some physical contact there between the two of them in a conversation." Jones testified that the two men met, spoke briefly, and Zeeman seemed to reach toward the other man. Zeeman and the other individual then went in separate directions. Both officers sus-

---

[1] (Punctuation omitted.) *Hines v. State*, 214 Ga. App. 476, 477 (448 SE2d 226) (1994).

pected that Zeeman had been involved in a drug transaction.

The officers also noted that Zeeman appeared to be intoxicated. Massey stated that Zeeman "wasn't walking well. He was in a wobbly state. When he was returning [to his car], I could see his eyes, which [were] [k]ind of like spacey looking. . . . Intoxicated, he appeared to be. . . . Very unstable looking in the eyes." Jones similarly recalled that Zeeman "appeared to be intoxicated or on drugs."

Because of the suspected drug transaction and Zeeman's apparent intoxication, the officers decided to question him. Massey testified that he decided to approach Zeeman in part because he was concerned about Zeeman driving away from the gas station under the influence of alcohol or drugs. As Zeeman got into his car, Massey walked up, identified himself, and placed his hand on Zeeman's still-open car door. Massey then looked down at the door's inside handle and saw "three small ziplock type bags with some sort of white residue in them or light colored residue."

Massey estimated that he has investigated hundreds or possibly over a thousand narcotics cases. In all cases in which he found a suspected controlled substance in this type bag, the substance turned out to be an illegal drug. Jones, who has handled several hundred drug cases, saw the bags after Massey seized them. He testified that cocaine is commonly found in small plastic bags similar to these.

After discovering the bags, Massey arrested Zeeman. He then searched Zeeman's car and found two more bags with residue, a syringe "with some sort of liquid still in it," a glass cylinder containing a metal fiber and burned residue, and a length of wire with burned residue on one end.

Zeeman moved to suppress the evidence found in his car, arguing that the officers had no grounds to detain him, arrest him, or search the car. Following an evidentiary hearing, the trial court denied the motion. It found that "the officers stopped [Zeeman] with reasonable, articulable suspicion and the resulting search of [Zeeman's] car was legal." We find no error in the trial court's ruling.

1. A police officer may conduct a brief investigatory stop when, under the totality of the circumstances, the stop is "justified by some objective manifestation that the person stopped is, or is about to be, engaged in criminal activity."[2] The necessary "articulable suspicion

---

[2] *Garmon v. State*, 271 Ga. 673, 676 (2) (524 SE2d 211) (1999). The state argues that we need not consider whether the officers had a reasonable, articulable basis to briefly detain Zeeman. According to the state, this case involved a noncoercive, police-citizen encounter, rather than a detention or seizure raising Fourth Amendment concerns. See *Voyles v. State*, 237 Ga. App. 886-887 (1) (517 SE2d 113) (1999) (discussing difference between a noncoercive, police-citizen encounter and a brief detention). The trial court, however, addressed whether the officers "stopped [Zeeman] with reasonable, articulable suspicion," presumably because it determined that the confrontation exceeded a noncoercive encounter.

that the law has been or is about to be violated is less than probable cause, but greater than mere caprice."[3] As our Supreme Court has noted,

> [w]hat is necessary is a founded suspicion, some basis from which the court can determine that the detention was not arbitrary or harassing. Thus, in cases where there are some reasonable articulable grounds for suspicion, the state's interest in the maintenance of community peace and security outweigh[s] the momentary inconvenience and indignity of investigatory detention.[4]

On appeal, Zeeman argues that the officers' "hunch" about a possible drug transaction could not justify the investigatory stop. Massey clearly testified, however, that the decision to approach Zeeman stemmed not only from the suspected drug deal, but also from Zeeman's apparent intoxication. Massey explained that he did not want Zeeman to leave the area in his car because he thought Zeeman might "be under the influence of something." Asked about the basis for the stop, Jones similarly mentioned the suspected drug transaction *and* the fact that Zeeman was "staggering very badly." In Jones' words,

> [w]hen we saw him, it was obvious from his demeanor and everything in the parking lot that we thought we were witnessing a drug deal. Also, his behavior and his staggering and walking up to — I mean, it was not normal. . . . It was not normal to me to see someone staggering like that in a parking lot. You may later find out they have a medical condition, but you find that out later.

Regardless of whether the suspected drug transaction could support a stop, therefore, the officers pointed to another reasonable basis for briefly detaining Zeeman. Both officers concluded from Zeeman's appearance and demeanor that he might be under the influence of drugs or alcohol. They also saw him returning to his car at the gas pumps. These observations gave the officers specific and articulable grounds to believe that Zeeman was about to commit a crime by driving under the influence.[5] Given the circumstances, a reasonable

---

[3] (Punctuation omitted.) *Garmon*, supra at 677 (2).

[4] (Citations and punctuation omitted.) Id.

[5] Compare *State v. Jones*, 214 Ga. App. 593, 594 (448 SE2d 496) (1994) ("The officer's stop of the appellee was not justified in that the officer did not observe him commit any crime before the stop, and the officer did not testify to any facts that would indicate the appellee was about to violate the law in any manner.").

officer would be authorized to conduct a brief investigatory stop.[6]

2. Following the lawful stop, Massey seized the three plastic bags found in plain view inside the car's open door.[7] On appeal, Zeeman argues that the plain view doctrine should not authorize such a seizure.

As we have previously determined, however, "[c]ontraband lawfully found in plain view need not be ignored and can be seized."[8] The plain view doctrine permits "a warrantless search and seizure if . . . the agents are lawfully in position to obtain the view, the discovery is inadvertent, and the object viewed is immediately seen to be incriminating."[9] In this case, Massey was legally in a position to see the bags and discovered them inadvertently, simply by looking down at the door. The evidence also shows that he immediately viewed the bags and residue as incriminating, prompting him to arrest Zeeman without delay. According to Massey, in his experience, such residue in this type of bag is a controlled substance.[10] Thus, the trial court did not err in finding that Massey properly seized the three bags.[11]

3. We also find no error in the trial court's refusal to suppress evidence seized during the subsequent search of Zeeman's car. After Massey discovered the three bags in the car door handle, he placed Zeeman under arrest, then searched the car. A policeman who lawfully arrests a vehicle occupant "may, as a contemporaneous incident of that arrest, search the passenger compartment of that automobile . . . even after the arrestees are no longer in it."[12]

The three residue-coated plastic bags provided the officers probable cause to arrest Zeeman. Both testified about their significant experience in narcotics investigations and their familiarity with resi-

---

[6] *Hopkins v. State*, 209 Ga. App. 337, 338 (1) (a) (433 SE2d 423) (1993) (physical precedent only); see also *Holt v. State*, 227 Ga. App. 46, 49 (487 SE2d 629) (1997) ("In determining whether such a stop, made in the absence of an observed violation of law, was justified, the proper inquiry is not merely whether the officer *could* validly have made the stop, but whether under the same circumstances a reasonable officer *would* have done so absent any invalid purpose.") (punctuation omitted; emphasis in original).

[7] At the hearing on the motion to suppress, Zeeman denied that the bags were in plain view. The trial court was authorized to believe Massey's testimony over Zeeman's, and we will not disturb that finding on appeal. See *Hines*, supra.

[8] *Samuel v. State*, 198 Ga. App. 558, 560 (2) (402 SE2d 325) (1991).

[9] Id.; see also *Bozeman v. State*, 196 Ga. App. 743, 744 (1) (397 SE2d 30) (1990); *Cameron v. State*, 192 Ga. App. 697 (385 SE2d 792) (1989).

[10] Compare *Stone v. State*, 162 Ga. App. 654, 655 (1) (292 SE2d 525) (1982) (veteran police officer testified at suppression hearing that "when he saw the torn paper sack containing the brownish and white substances, to his personal knowledge what he observed, 'was not any controlled substance or was not anything that appeared to be a controlled substance,' and that at that time there was no crime being committed in the officer's presence").

[11] *Samuel*, supra.

[12] (Citations and punctuation omitted.) *Scoggins v. State*, 248 Ga. App. 1, 2 (545 SE2d 19) (2001); see also OCGA § 17-5-1.

due in small ziplock bags. Zeeman's arrest was lawful.[13] Massey, therefore, was authorized to search Zeeman's car following the arrest.

*Judgment affirmed. Johnson, P. J., and Ellington, J., concur.*

DECIDED MAY 16, 2001.

*William C. Head,* for appellant.
*Patrick H. Head, District Attorney, Dana J. Norman, David M. Hilts, Assistant District Attorneys,* for appellee.

---

[13] See *Bright v. State*, 265 Ga. 265, 279 (5) (a) (455 SE2d 37) (1995).