## A05A0400. STEED v. THE STATE.
### (616 SE2d 185)

BARNES, Judge.

A jury convicted Mark Jason Steed of trafficking in amphetamine, and Steed appeals. He contends that the trial court erred in denying his motion to suppress; that the evidence against him was insufficient to sustain the verdict; that the trial court erred in failing to charge the jury regarding corroboration of an accomplice; and that his trial counsel was ineffective. For the reasons that follow, we affirm.

1. Steed contends that the trial court erred in denying his motion to suppress evidence of the drugs found in his vehicle, arguing that the police lacked a reasonable, articulable suspicion that justified stopping his car.

When an appellate court reviews a trial court's order concerning a motion to suppress evidence, the appellate court should be guided by three principles with regard to the interpretation of the trial court's judgment of the facts. First, when a motion to suppress is heard by the trial judge, that judge sits as the trier of facts. The trial judge hears the evidence, and his findings based upon conflicting evidence are analogous to the verdict of a jury and should not be disturbed by a reviewing court if there is any evidence to support it. Second, the trial court's decision with regard to

questions of fact and credibility must be accepted unless clearly erroneous. Third, the reviewing court must construe the evidence most favorably to the upholding of the trial court's findings and judgment.

(Citations and punctuation omitted.) *Tate v. State*, 264 Ga. 53, 54 (1) (440 SE2d 646) (1994).

A College Park police officer assigned to the Tri-Cities Narcotics Drug Task Force testified that on February 20, 2003, he received a call from a confidential informant who told him that two men were going to buy drugs at a trailer park currently being investigated. The informant had supplied information for a month or two regarding a woman at the same trailer park location who was brokering illegal narcotics brought from outside the country. The informant had provided the name and address of the broker, as well as the identification of various people in the drug organization, which the officer had independently verified.

On February 20, the informant told the officer that a trailer park resident was expecting someone to arrive and complete a drug transaction. Ninety minutes later, the informant called again to say that two white men were at the trailer park, had just completed a transaction, and were about to leave in a gray "dually" pickup truck.[1] The informant said the truck would be pulling out onto Norman Berry Road from the trailer park entrance and heading toward Cleveland Avenue. The officer was waiting in an unmarked van on Cleveland Avenue at its intersection with Norman Berry Road, and in a minute or two he saw a gray "dually" pickup truck with two white men traveling on Norman Berry toward the intersection.

A marked police car activated its lights behind the truck, and as it came to a stop, the passenger door opened slightly and someone dropped a plastic-wrapped package on the ground. The agent retrieved the package, identified it as suspected methamphetamine, and arrested Steed, who was the driver, and Chad Garmon, who was the passenger. Steed and Garmon were jointly indicted for trafficking in amphetamine.

The trial court denied Steed's motion to suppress evidence of the drugs, finding that the police officers had sufficient information to formulate a reasonable, articulable suspicion that warranted stopping the vehicle. Once Garmon dropped the package of drugs from the side door, the police had probable cause to proceed further with their investigation, which led to the men's arrest.

---

[1] A "dually" pickup truck has two extra rear wheels.

Steed contends that the confidential informant was "of unknown reliability," and contends that his tip was not sufficiently detailed or corroborated to warrant stopping the vehicle. An officer needs only reasonable, articulable suspicion of criminal conduct, not probable cause, to initiate an investigative stop. *Evans v. State*, 216 Ga. App. 21, 23 (2) (453 SE2d 100) (1995).

> This is not a case in which an officer stopped a vehicle based solely upon an anonymous tip, but rather one in which the tip came from a known, reliable informant. . . . [Steed] contends that even a tip from a reliable, confidential informant must provide some basis for predicting the specific future behavior of the suspect. This applies to an anonymous telephone tip, not to a tip from a known, reliable informant.

(Citations omitted.) *Rider v. State*, 222 Ga. App. 602, 604 (475 SE2d 655) (1996); accord *Wilson v. State*, 249 Ga. App. 560, 562 (549 SE2d 418) (2001). The trial court did not err in denying Steed's motion to suppress.

2. Steed contends that the evidence against him was insufficient to sustain the verdict, because the State failed to corroborate his co-defendant's testimony. He further asserts that the trial court erred in failing to charge the jury on the definition of an accomplice and the need for corroboration, and that his trial counsel was ineffective for failing to submit written requests to charge on these issues. We view the evidence on appeal in the light most favorable to the verdict, and no longer presume that the defendant is innocent. We do not weigh the evidence or decide the witnesses' credibility, but only determine if the evidence is sufficient to sustain the convictions. *Taylor v. State*, 226 Ga. App. 254, 255 (485 SE2d 830) (1997). We construe the evidence and all reasonable inferences from the evidence most strongly in favor of the jury's verdict. *Sims v. State*, 226 Ga. App. 116 (1) (486 SE2d 365) (1997).

Viewed in that light, the evidence at trial established that the East Point police stopped Steed's truck pursuant to direction from a Tri-Cities Narcotics Drug Task Force officer. As the truck came to a stop, passenger Garmon opened his door and dropped a package to the ground. That package contained suspected amphetamine or methamphetamine, and both Steed and Garmon were arrested. Neither had any money, and both lived and worked near the Douglas-Paulding County line. The Georgia Bureau of Investigation lab confirmed that the material in the package was amphetamine and weighed 33.71 grams. The police found an additional 21 grams of marijuana in a cookie tin beneath the driver's seat. Steed and Garmon were indicted

for trafficking in amphetamine and marijuana possession with intent to distribute.[2]

At trial, Garmon testified that he worked for Steed part-time, helping him with his race car and trailer. Garmon had no vehicle at that time, so Steed picked him up to go to work and dropped him off at home when they were done. On February 20, 2003, Steed was driving Garmon home when Steed received a call on his cell phone and said he had to go meet his Aunt Sue. Steed drove to a trailer park somewhere in East Point and parked, and his "supposedly Aunt Sue" came to the driver's window where she and Steed began a conversation to which Garmon paid little attention. An Hispanic man arrived and she met with him inside her trailer, then came back to the truck. Steed handed her money, and she handed him a package. Garmon thought it contained drugs and considered getting out of the truck, but he did not really know where he was, it was late, he would have been scared to walk down the street at that location, and he had no money for transportation home, so he stayed inside the truck.

Steed and Garmon left in the pickup truck, and as they traveled down the road, Steed noticed the police car behind him. Steed grew angry and red in the face, threw the package to Garmon and yelled, "Get it out the vehicle. Get it out. Get it out now." When Steed's counsel asked why he obeyed, considering the circumstances, Garmon replied, "He's bigger than I am, sir, . . . I mean, you look at the size of Mr. Steed and you look at me, what would you do in my position?" The jury found Garmon not guilty of amphetamine trafficking and convicted Steed.

Steed argues that Garmon's testimony alone was insufficient to sustain his conviction, because Garmon was an accomplice and the State failed to present corroborating evidence. OCGA § 24-4-8 prohibits felony convictions based upon the sole testimony of an accomplice, but whether the State presents sufficient corroboration of the accomplice's testimony "is peculiarly a matter for the jury to determine. If the verdict is founded on slight evidence of corroboration connecting the defendant with the crime, it cannot be said, as a matter of law, that the verdict is contrary to the evidence. [Cit.]" *Sparks v. State*, 234 Ga. App. 11, 12 (1) (505 SE2d 555) (1998). "The necessary corroboration may be by circumstantial evidence. Presence, companionship, and conduct before and after the offense are also circumstances from which [Steed's] participation in the crime could be inferred. [Cit.]" (Citation and punctuation omitted.) *Stephenson v. State*, 220 Ga. App. 95, 97 (3) (469 SE2d 266) (1996).

---

[2] At trial, the State dead-docketed the marijuana indictment against both men.

The State presented evidence that the baseball-sized package containing the amphetamine was too bulky to be hidden inside a pants pocket, and that the men wore t-shirts with no overshirts or overcoats. The truck Steed was driving was registered to him, both men were far from their home and work, and neither had any cash on hand. Additionally, the police officer, who was qualified as an expert in the street sale of illegal narcotics and patterns of narcotics trafficking, testified that the amount of amphetamine that Garmon dropped from inside the truck was more than an individual user would have on hand, and that the officers found no user paraphernalia in the truck or on the two men. He further testified that this quantity of amphetamine would cost about $1,000 to $1,200 in Fulton County, a known hub for the transportation of illegal narcotics from other states throughout the country, but would sell for more in other areas of the state because it was less available there, and that considering the quantity present with the absence of cash, "it was probable that drugs were just bought." An individual user would have paraphernalia, more money and less dope.

In this case,

> [t]he State did not seek to convict upon the evidence of the accomplice alone, but adduced other evidence, almost, if not wholly, sufficient to warrant the verdict, independently of the evidence of the accomplice. This being so, the rule of corroboration laid down by the code does not apply in its letter, and unless the attention of the court had been called to the accomplice element in the evidence, . . . we think the conviction was not vitiated by the omission to charge on that subject.

*Robinson v. State*, 84 Ga. 674, 679 (11 SE 544) (1890). "As the state introduced the testimony of a police officer that defendant was seen [in a location that] corresponded with the scheme testified to by [Garmon], the prosecution did not rely solely upon the testimony of an accomplice." *Smith v. State*, 154 Ga. App. 741, 742 (3) (270 SE2d 5) (1980).

Therefore, we conclude that the trial court did not err in finding that Steed's trial counsel was not ineffective for failing to file a written request for a jury charge on accomplice testimony and corroboration; the trial court did not err in failing to give such a charge sua sponte, and the evidence as outlined above was sufficient for a rational trier of fact to find Steed guilty beyond a reasonable doubt of trafficking in amphetamine. *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979).

*Judgment affirmed. Ruffin, C. J., and Johnson, P. J., concur.*

DECIDED JUNE 22, 2005.

*Amy H. Bogartz*, for appellant.
*Paul L. Howard, Jr., District Attorney, Anne E. Green, Assistant District Attorney*, for appellee.